# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * * * * * * *
TITUS HENDERSON,                  *
                                  *    No. 19-479V
        Petitioner,               *    Special Master Christian J. Moran
                                  *
v.                                *
                                  *    Filed: July 26, 2022
SECRETARY OF HEALTH               *
AND HUMAN SERVICES,               *    entitlement, SIRVA, seizure reaction
                                  *
        Respondent.               *
* * * * * * * * * * * * * * * * * * * * * * * *
```

Titus Henderson, pro se, Green Bay, WI;
Mallori B. Openchowski, United States Dep't of Justice, Washington, DC, for
respondent.

## UNPUBLISHED DECISION DENYING COMPENSATION[1]

Representing himself, Titus Henderson alleged he received vaccinations on April 14, 2016 and April 16, 2016, which caused him to suffer from an "injury of shoulder deltoid muscle and nerves, [and a] severe allergic (anaphylaxis) seizure reaction, etc." Pet., filed Apr. 1, 2019, at pdf 2.  After Mr. Henderson filed some medical records, the Secretary of Health and Human Services ("the Secretary") reviewed that material and advised that he was not entitled to compensation. Resp't's Rep., filed pursuant to Vaccine Rule 4, June 28, 2021.  Mr. Henderson has

---

[1] Because this published decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims's website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). This posting means the decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

attempted to address the deficiencies the Secretary has identified. His case was submitted for adjudication. For reasons that follow, Mr. Henderson is not entitled to compensation and his petition is dismissed.

## I.   **Procedural History**

Mr. Henderson filed his petition on April 1, 2019, and with his petition, he included a document (labeled exhibit 3) indicating he was a prisoner within the Wisconsin Department of Corrections ("DOC"). See Pet., filed Apr. 1, 2019.[2] The petition refenced exhibits 1-3, though only exhibit 3 was received with the petition. Contemporaneously, Mr. Henderson filed a motion for leave to proceed in forma pauperis.[3] This case was assigned to the undersigned special master on April 3, 2019.

Per the Vaccine Guidelines, Mr. Henderson was ordered to submit medical records spanning the three years before the alleged vaccinations to the present. He was also ordered to re-file exhibits 1 and 2, which appeared to be missing. See Order, issued April 8, 2019.

On April 17, 2019, Mr. Henderson filed a document titled "ORDER to Produce Titus Henderson's Medical Records, and six (6) Month Trust Account Statement." See ECF #9. The document, authored by Mr. Henderson, directed the Secretary of the Wisconsin DOC, Kevin Carr, to produce the titular documents and send them to the undersigned. The filing included two Health Service Request Forms ("HSR") and Copayment Disbursement Authorization forms.[4] The forms indicate Mr. Henderson requested all of his health records, and that prison staff advised him to pay for copies of those documents and/or have a lawyer request the

---

[2] The document (labeled exhibit 3 by petitioner) is titled "MEDICAL RESTRICTIONS / SPECIAL NEEDS." It indicates Mr. Henderson was incarnated and was to take "Meals on Unit" between August 31, 2016 and November 31, 2016. Exhibits 1 and 2 were not filed at this time. As discussed herein, the undersigned ultimately assigned documents exhibit numbers to ensure consistent references.

[3] The motion indicates that Mr. Henderson was (in 2019) incarcerated at the Green Bay Correctional Institution.

[4] HSR forms contain the patient's subjective complaints as opposed to notes taken by a medical professional during an examination.

records.  Mr. Henderson filed a complaint with the prison because "HSU won't send his vaccination files to the court." Id.

Due to difficulty obtaining and forwarding records, Mr. Henderson moved for an extension of time to file his medical records.  Pet'r's Mot., filed June 4, 2019.  The motion alleges the Green Bay DOC Health Manager, Jean Lutsey, "has concealed + destroyed medical files to hinder / deny" review of the case and "refuse[s] to release other medical files without a Court Order." Id.  The motion also asked the undersigned to order the prison to protect and produce the requested medical files.  Included with the motion is an April 12, 2019 Institution Complaint Examiner's report (complaint # GBCI-2019-6368), which stated that "files are not released by inmate request when there are no court proceedings.  [Health Services Unit] needs to get request from the court to produce documents.  Inmate Henderson signed a consent to release documents but there was no request.  Recommendation: Dismiss."

On June 20, 2019, the undersigned granted the extension of time, provided confirmation that Mr. Henderson had initiated court proceedings, and implicitly requested the documents.  See Order, issued June 20, 2019.  The order provided a July 30, 2019 deadline.  On July 2, 2019, Mr. Henderson moved for an extension of time or suspension of proceedings.  This indicated Mr. Henderson likely had not received the June 20, 2019 order.  Mr. Henderson's July 2, 2019 motion also suggested an attorney might be assisting him.  The undersigned granted Mr. Henderson's motion to stay the proceedings for 30 days, allowing Mr. Henderson until August 30, 2019 to file his medical records and to re-file exhibits 1 and 2.

On August 30, 2019, Mr. Henderson filed a 182-page document titled "Proposed Findings of Facts," which included medical records and other exhibits.  Given that the records submitted appeared to generally cover April 2013 to the present, with some acknowledgments about missing records, the undersigned ordered the Secretary to file a status report regarding his medical reviewer's assessment.  See Order, issued Sept. 26, 2019.

The Secretary filed a status report, requesting additional time to evaluate the completeness of medical records.  Resp't's Status Rep., filed Nov. 25, 2019.  The undersigned granted the Secretary's request and ordered him to file a status report regarding the completeness of the records by January 24, 2020.

Subsequently, the Secretary moved to suspend proceedings in this case for at least ninety days.  Concerned about the number of petitions originating from Waupun Correctional Institution, the Secretary indicated he would conduct an

3

investigation for potentially fraudulent activity.  <u>See</u> Resp't's Mot. to Suspend Proceedings, filed Dec. 23, 2019.

The undersigned partially granted the Secretary's motion, allowing an additional thirty days for the Secretary to evaluate the medical records Mr. Henderson had filed.  <u>See</u> Order, issued Jan. 8, 2020.

On February 27, 2020, the Secretary renewed his request to stay proceedings, noting similar cases were under evaluation with the Department of Justice's Office of the Inspector General.[5]  Considering that any pattern of fraud would still need to be evaluated in the context of the facts and medical records specific to this case, the undersigned denied the Secretary's motion.  <u>See</u> Order, issued Mar. 6, 2020.  The undersigned again ordered Mr. Henderson to file all medical records between April 2013 and April 2016 and ordered the Secretary to provide an update on his review of the materials in this case.  <u>Id.</u>

On April 6, 2020, Mr. Henderson moved to suspend proceedings for eighty days.[6]  Mr. Henderson indicated that the emerging Covid-19 pandemic and orders issued by Wisconsin Governor Tony Evers caused prison staff to temporarily close down the medical records office.

A few days later, the Secretary filed a status report requesting records generally and specifically.  Of particular importance, the Secretary requested "2. Documentation of vaccination of both claimed vaccines (influenza, Tdap) . . . 3. Any documentation regarding evidence of seizures, anaphylaxis, nerve damage . . . [and] 4. Any and all records that would indicate the onset of symptoms."  Resp't's Status Rep., filed Apr. 8, 2020.

On April 30, 2020, the undersigned granted Mr. Henderson's motion to stay proceedings for eighty days.  Mr. Henderson was ordered to file his complete set of medical records, including those identified by the Secretary, by July 17, 2020.

Next, on May 26, 2020, Mr. Henderson filed a document requesting the undersigned issue an order to assist him in obtaining his medical records.  On June

---

[5] The Secretary also identified "possible items outstanding."  He requested compete records from the three years prior to the vaccination at issue "[t]o the extent they exist."  But, the Secretary did not identify any specific records.

[6] Some content within the motion is difficult to read due but the essence was gleaned.

4

4, 2020, the undersigned issued an order (to be presented to the DOC) explaining that Mr. Henderson requires complete versions of his medical records between April 2013 and April 2016, as well as the specific records identified by the Secretary. The order stated Mr. Henderson may present the order to DOC officials to facilitate gathering the medical records.

The July 17, 2020 deadline passed without any new records or updates from Mr. Henderson. On August 13, 2020, the undersigned issued a similar order to the May 26, 2020 order to help facilitate the collection of medical records. A new deadline for Mr. Henderson's records was set, sua sponte, for September 14, 2020.

Unable to obtain the requested records, Mr. Henderson again moved for an order to produce the records held by the Wisconsin DOC. See Pet'r's Mot., filed Aug. 18, 2020. On September 1, 2020, the undersigned issued an order (to provide explanation to Wisconsin DOC officials) reiterating that Mr. Henderson required complete versions of his medical records.[7] On September 6, 2020, Mr. Henderson filed additional documentation evincing that he was attempting to obtain his medical records; the letter that he filed indicated the DOC would release his medical records after he provided a signed released form. See ECF #36.

Presumably due to administrative delays and workplace disruptions due to Covid-19, a few months passed without any new filings. On November 30, 2020, the undersigned issued a show cause order, requiring Mr. Henderson to demonstrate why his case should not be dismissed for failure to prosecute his case. Mr. Henderson responded on January 25, 2021. His response reiterated difficulties obtaining his medical records and renewed his request that the undersigned compel the Wisconsin DOC to produce his complete set of medical records. Subsequently, on February 8, 2021, and February 12, 2021, Mr. Henderson filed more medical records. See ECF #39, #40.

With the recent filings, it appeared that Mr. Henderson had filed all of his medical records. On April 28, 2021, the undersigned issued an order requiring the Secretary to evaluate the petition and medical records, and to file his Rule 4(c) Report. To address inconsistencies in how Mr. Henderson's exhibits had been labeled, the order specified new exhibit numbers for each of the exhibits submitted.

---

[7] Due to the timing of the filings, it appeared that Mr. Henderson had not yet received the August 13, 2020 order.

See Order, issued Apr. 28, 2021 (sua sponte creating a consistent exhibit list for petitioner).

On June 28, 2021, the Secretary filed his Rule 4(c) Report, which recommended that the petition be dismissed for insufficient proof. The Secretary identified numerous issues. Mr. Henderson had not demonstrated a Table SIRVA injury because the record did not demonstrate that Mr. Henderson developed shoulder pain within 48 hours of administration of the Tdap vaccine. See Resp't's Rep. at 7. Shoulder pain was not reported or discussed with a medical provider until August of 2018, more than two years after the Tdap vaccine. Id.; exhibit 3 at 27-28. Additionally, Mr. Henderson had not established causation-in-fact regarding his other alleged injuries.

The undersigned ordered Mr. Henderson to file a response to the Rule 4(c) Report with any evidence and/or arguments. See Order, issued June 29, 2021. On September 7, 2021, Mr. Henderson moved for an extension of time because he had not received the prior order until five days before his deadline. The same day, the undersigned granted Mr. Henderson's motion, providing him with an additional month to muster his arguments and evidence. After the deadline passed without any response, on October 22, 2021, the undersigned extended Mr. Henderson's deadline, sua sponte, until November 12, 2021. The deadline passed again without a response. On November 29, 2021, the undersigned issued an order, permitting Mr. Henderson a final opportunity to submit a response, resetting his deadline for January 3, 2022.

Mr. Henderson's response to the Secretary's Report was received on November 30, 2021. The response document contained two written pages and appeared to be incomplete. In the interest of fairness, Mr. Henderson was provided the opportunity to resubmit his filing by March 16, 2022. See Order, issued Feb. 16, 2022. After a few months passed without any response, it appeared the record was complete. The undersigned issued an order on April 18, 2022 indicating this case was submitted for adjudication.

## II.    Standards for Determining Facts

Petitioners are required to establish their cases by a preponderance of the evidence. 42 U.S.C. § 300aa-13(a)(1). The preponderance of the evidence standard requires a "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the judge of the fact's existence." Moberly v. Sec'y of

Health & Hum. Servs., 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (citations omitted).

The process for finding facts in the Vaccine Program begins with analyzing the medical records, which are required to be filed with the petition. 42 U.S.C. § 300aa-11(c)(2). Medical records that are created contemporaneously with the events they describe are presumed to be accurate. Cucuras v. Sec'y of Health & Hum. Servs., 993 F.2d 1525, 1528 (Fed. Cir. 1993). However, medical records may not always list all problems a person is experiencing. See Kirby v. Sec'y of Health & Hum. Servs., 997 F.3d 1378, 1382 (Fed. Cir. 2021).

Pursuant to these standards for determining when events did or did not happen, the undersigned finds how the evidence preponderates. In setting forth the findings, the undersigned also cites to the primary evidence that is the basis for the finding. The undersigned recognizes that not all evidence is entirely consistent with these findings. See Doe 11 v. Sec'y of Health & Hum. Servs., 601 F.3d 1349, 1355 (Fed. Cir. 2010) (ruling that the special master's fact-finding was not arbitrary despite some contrary evidence).

## III.   Findings of Facts

Events in Mr. Henderson's life can be divided into 3 periods. The first period is Mr. Henderson's health before he was vaccinated. The next period is the months before and after April 2016. The last period covers the most recent medical records. In the findings below, not every medical record is described, as most of the records are not relevant to Mr. Henderson's claims. The most relevant records (with respect to timing and complaints germane to the petition) are recounted.

### A.   Health Before Vaccination

Based on the submitted records, little can be gleaned regarding Mr. Henderson's health prior to the alleged vaccinations. He had a history of hyperlipidemia, chronic abdominal pain, constipation, (exhibit 3 at 27) and PTSD with reportedly related seizures. Exhibit 3 at 27; exhibit 4 at 47-48.[8] Mr.

---

[8] Mr. Henderson was evaluated by psychiatrist Joel Rigueur on August 17, 2016. Under history of present illness, Dr. Rigueur wrote the following: "Mr. Titus Henderson presented with a history of posttraumatic stress disorder with a history of being isolated for 15 years in isolation and a history of physical abuse and has been having flashbacks and nightmares and being tortured with sequela of

Henderson appears to have had other health concerns that are not germane to this case.

**B.    Health Contemporaneous to the Alleged Vaccinations on April 14 and 16, 2016**

On February 20, 2016, Mr. Henderson was housed at the Racine Correctional Institution ("RCI"). Exhibit 4 at 323. A medication supply refill request form indicates that on that date, he was given statins, Tylenol, and Tums. Id. He was provided Senna with Docusate (stool-softener and laxative) and Omeprazole on March 8, 2016. Id. at 316.

The records provided indicate Mr. Henderson was transferred from the RCI to the Waupun Correctional Institution on March 29, 2016. Exhibit 4 at 319. Mr. Henderson submitted a HSR that day, stating on his form he was supposed to have a check-up for intestinal bleeding and claiming he was given the wrong medication. Exhibit 4 at 319. The following day, March 30, 2016, Mr. Henderson requested and was provided Tylenol. Id. at 320.

On April 14, 2016, Mr. Henderson received a Tdap vaccination. Exhibit 2.4 at pdf 36-37, handwritten page 27-28). The records provided do not state in which arm the vaccine was administered. Furthermore, the records do not state that an influenza vaccine was administered in April of 2016.[9]

---

seizures." Exhibit 4 at pdf 47. This history suggests any seizures Mr. Henderson may have been experiencing were related to PTSD and a traumatic past. Diagnoses included "Posttraumatic stress disorder, in remission[,]" and "Seizures, by history." Id. at 48. A history of back, neck, and abdominal pain were also noted, among other diagnoses.

[9] Among the records provided, no files indicate Mr. Henderson received a flu vaccine. In a HSR form dated July 4, 2018, Mr. Henderson wrote: "Mark Jensen destroyed my Vaccine file for Flu." Exhibit 3 at 371. No further information was provided to corroborate this allegation. This allegation seems unlikely given the immunization registration form provided (exhibit 2.4 at pdf 37), which lists all vaccines administered in 2016 and 2018. It lists influenza vaccine with a recommendation date of 08/01/2017 but does not list influenza vaccine under the list of administered vaccines.

On April 17, 2016, Mr. Henderson requested and was provided Tums, Tylenol, and a stool-softener / laxative. Exhibit 4 at 318.

On May 12 and 14, 2016, Mr. Henderson requested and was provided Tylenol, along with various stomach medications. Id. at 314. A May 15, 2016 HSR indicated Mr. Henderson was on a list to see a doctor for kidney and liver exams, intestinal bleeding, and migraines. Exhibit 4 at 312.

On June 1, 2016, Mr. Henderson was examined for ear pain. Exhibit 2.2 at pdf 14. He was evaluated for hypertension on June 3, 2016. Id.

### C.    Events After June 2016

Mr. Henderson submitted a HSR form on July 15, 2016. On the form, he wrote: "I took the Flu shot & developed the Flu." Exhibit 4 at 303. He described himself as exhausted and "drained." A staff member noted Mr. Henderson's lab work was good, except for high cholesterol. He was referred to nursing for "flu complaints." Id. However, no accompanying records show Mr. Henderson received a flu shot.

Mr. Henderson expressed concern about a medication change related to his heartburn on July 28, 2016. Exhibit 2.2 at pdf 17. Under musculoskeletal and neurological examinations, a staff member noted "[n]o apparent abnormalities." Id. at pdf 18.

On August 9, 2016, Mr. Henderson submitted a HSR form. He wrote: "I'm having sleep fits & seizures again. My cellmate Wachoviack told Sgt. / security I threaten to kill him at night. Security moved him. I have terrible shaking and anxiety. I have a history of stabbing inmates & attacking staff. Reapply prescription Tegretol, Klonopin, etc." Exhibit 4 at 296. Mr. Henderson attached a handwritten description of multiple "Seizures / Sleep Awake" issues that he recalled. The self-authored report recounts sleep fits, seizures, and shaking headaches experienced between July 19, 2016 and August 9, 2016. Id. 297.

A Nursing Encounter Progress Note from October 31, 2016 documents some concerns. Mr. Henderson complained of ear pain. Moderate tremors when eating and writing were documented as well as reported difficulty walking. Exhibit 2.2 at pdf 13.

None of the records from 2017 appear relevant to Mr. Henderson's claims.

Mr. Henderson was evaluated on September 5, 2018. Exhibit 3 at 27. He had multiple complaints. Id. He told the treater that he had a CT scan, during which he received an IV. Mr. Henderson reported that afterwards, he had "anterior arm pain" but denied any further injury or trauma. Id. The treater assessed Mr. Henderson as having right arm pain and recommended physical therapy. Id. at 28.

In 2019, Mr. Henderson reported an "ongoing" right shoulder injury. Exhibit 3 at 187-88. However, the preceding notes and HSRs do not discuss the right shoulder injury, making it difficult to discern when the pain began. Dr. Daniel LaVoie diagnosed Mr. Henderson with "right anterior shoulder pain" and referred him to a physical therapist. Id. at 188.

Records exist regarding Mr. Henderson's health in 2020 and 2021. However, these do not bear recitation given they relate to ongoing issues unrelated to his claims.

## IV.   Standards for Adjudication

A petitioner is required to establish his case by a preponderance of the evidence. 42 U.S.C. § 300aa-13(1)(a). The preponderance of the evidence standard requires a "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the judge of the fact's existence." Moberly v. Sec'y of Health & Hum. Servs., 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (citations omitted). Proof of medical certainty is not required. Bunting v. Sec'y of Health & Hum. Servs., 931 F.2d 867, 873 (Fed. Cir. 1991).

Distinguishing between "preponderant evidence" and "medical certainty" is important because a special master should not impose an evidentiary burden that is too high. Andreu v. Sec'y of Health & Hum. Servs., 569 F.3d 1367, 1379-80 (Fed. Cir. 2009) (reversing the special master's decision that petitioners were not entitled to compensation); see also Lampe v. Sec'y of Health & Hum. Servs., 219 F.3d 1357 (Fed. Cir. 2000); Hodges v. Sec'y of Health & Hum. Servs., 9 F.3d 958, 961 (Fed. Cir. 1993) (disagreeing with the dissenting judge's contention that the special master confused preponderance of the evidence with medical certainty).

Mr. Henderson alleges, by implication, that he suffered a Table SIRVA and an off-Table injury.[10] For an off-Table injury case, the Federal Circuit has defined

---

[10] The Vaccine Injury Table associates the flu vaccine with anaphylaxis, a shoulder injury, syncope, and Guillain-Barre syndrome. XIV. Mr. Henderson has

the elements of a petitioner's case.  Petitioners bear a burden "to show by preponderant evidence that the vaccination brought about [the vaccinee's] injury by providing: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury."  Althen v. Sec'y of Health & Hum. Servs., 418 F.3d 1274, 1278 (Fed. Cir. 2005).

To find vaccine-causation, a petitioner must substantiate his case with medical records or medical opinion.  See id. at 1279 (citing 42 U.S.C. § 300aa-13(a)(1)).  Medical records are presumed to be accurate and "complete" such that they present all relevant information on a patient's health problems.  Cucuras, 993 F.2d at 1528.  Additionally, "petitioners must proffer trustworthy testimony from experts who can find support for their theories in medical literature in order to show causation under the preponderance of the evidence standard."  LaLonde v. Sec'y of Health & Hum. Servs., 746 F.3d 1334, 1341 (Fed. Cir. 2014).

## V.   **Analysis**

Mr. Henderson alleges he developed "injury of shoulder deltoid muscle and nerves, [and a] severe allergic (anaphylaxis) seizure reaction, etc." from influenza and Tdap vaccines he allegedly received on April 14 and 16, 2016.  Pet., filed Apr. 1, 2019, at pdf 2.  These conditions are discussed below.  Mr. Henderson does not provide a medical theory, a logical sequence of cause and effect between the vaccine(s) and his alleged injuries, or a timeframe in which vaccine causation could be inferred.  Therefore, Mr. Henderson does not meet any of the elements required by Althen.

### A.   **Injury of Shoulder Deltoid Muscle and Nerves (Table-SIRVA)**

The undersigned will charitably interpret this allegation as alleging SIRVA, a Table injury.  As previously discussed, the record does not demonstrate that Mr. Henderson received a flu vaccine.  Thus, to prove he suffered a SIRVA in this

---

alleged "injury of shoulder deltoid muscle and nerves, [and a] severe allergic (anaphylaxis) seizure reaction, etc."  A seizure reaction seems to be an off-Table claim.  There are no medical records supporting an anaphylaxis or any immediate adverse reaction to any vaccinations.

case, the shoulder injury would need to relate to the Tdap vaccine that he received on April 14, 2016. Exhibit 2.4; exhibit 2.4 at pdf 37.[11]

The Vaccine Injury Table provides that SIRVA is a presumptive injury for a Tdap vaccine when the petitioner develops shoulder pain within 48 hours of the vaccine administration, has not history of pain, inflammation or dysfunction in the affected shoulder prior to vaccination, the pain is limited to that shoulder, and there is no other condition that would explain the shoulder pain. See 42 C.F.R. § 100.3(a)(I)(C) and (c)(10).

One problem is the medical records do not specify which arm received the Tdap vaccine. Similarly, the petition does not state which shoulder was allegedly injured. These facts alone make determining the existence of a SIRVA difficult. 42 C.F.R. 100.3(a). Nonetheless, even assuming shoulder pain developed in the arm in which the Tdap vaccine was administered, another significant issue precludes a finding of entitlement to compensation. Namely, pain within 48 hours of administration has not been demonstrated. The records do not show that Mr. Henderson discussed or reported shoulder pain with a medical provided until August of 2018. Exhibit 3 at 27-28. In the contemporaneous record, Mr. Henderson related his arm pain to a recent IV. Without evidence that his arm/shoulder pain developed within 48 hours of a vaccination, Mr. Henderson cannot succeed on a Table SIRVA claim. 42 U.S.C. § 300aa-13(a)(1)(B) (the special master may not make a finding that petitioner has demonstrated a fact by a preponderance of the evidence "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion.").

## B.    Allergic Seizure Reaction and Nerve Damage (Off-Table)

To succeed in proving entitlement to compensation for off-Table injuries, petitioners must show by preponderant evidence "a medical theory causally connecting the vaccination to the injury." Althen, 418 F.3d at 1278. Mr. Henderson has not met his burden of presenting a persuasive medical theory that the Tdap vaccine caused an allergic seizure reaction. Mr. Henderson has failed to present any medical records that contain a causal medical theory. Mr. Henderson has also not presented any expert reports or testimony linking the vaccine to a

---

[11] The Wisconsin Immunization Registry form provided indicates a Pertussis/Tdap and Td vaccine were administered on April 14, 2016. The next listed immunizations are for Hepatitis B, administered in 2018. There are no other listed vaccines between these dates. This record tends to suggest Mr. Henderson did not receive a flu vaccine on April 14 or 16, 2016.

seizure reaction. Consequently, Mr. Henderson has not met his burden under the first prong of Althen.

Mr. Henderson is also required to show with preponderant evidence "a logical sequence of cause and effect showing that the vaccination was the reason for the injury." Althen, 418 F.3d at 1278. The Federal Circuit has instructed special masters to carefully consider the views of treating physicians. Capizzano v. Sec'y of Health & Hum. Servs., 440 F.3d 1317, 1326 (Fed. Cir. 2006). Here, statements from Mr. Henderson's treating physicians do not support a logical sequence of cause and effect. None of Mr. Henderson's treating doctors and nurses considered that he suffered a vaccine-related seizure disorder or nerve injury. Additionally, the records suggest Mr. Henderson was having seizures prior to the April 2016 vaccination. Exhibit 4 at 47-48. Thus, the evidence does not support a finding of a logical sequence of events between the vaccine and Mr. Henderson's alleged seizure reaction. Additionally, the evidence does not support a finding that he experienced a nerve-related injury.

Finally, Mr. Henderson must show by preponderant evidence "a proximate temporal relationship between vaccination and injury." Althen, 418 F.3d at 1278. Additionally, "[w]hen a petitioner relies upon proof of causation in fact rather than proof of a Table Injury," as Mr. Henderson does here, "a proximate temporal association alone does not suffice to show a causal link between the vaccination and the injury." Grant v. Sec'y of Health & Hum. Servs., 956 F.2d 1144, 1148 (Fed. Cir. 1992). Although some of the records Mr. Henderson provided mention seizures, they do not relate contemporaneously to his immunization. Even if they did, this it is not enough to establish causation. The lack of preponderant evidence regarding the first two Althen prongs would still prevent a finding of vaccine-causation.

For these reasons, Mr. Henderson has not shown that he is entitled to compensation for seizure reactions and/or nerve damage.

## VI.   Conclusion

The medical records provided show that Mr. Henderson has suffered various from various problems, prior to and during his incarceration. He deserves sympathy and compassion for the difficulties in his life. Additionally, his ability to represent himself and to gather medical records under difficult circumstances is admirable.

However, the medical records do not contain persuasive proof that he suffered the claimed injuries.  Mr. Henderson has not provided medical testimony to advance his claims.  Accordingly, Mr. Henderson has not demonstrated with preponderant evidence that he is entitled to compensation.

The Clerk's Office is instructed to enter judgment in accord with this decision unless a motion for review is filed.  For information about motions for review, including the deadline for any motion for review, the parties may consult the Vaccine Rules, which are found on the court's website.

**IT IS SO ORDERED**.

s/Christian J. Moran
Christian J. Moran
Special Master

14